# Whether the Agreement with Iran Can Be Treated as Void in Part

Even assuming the agreement with Iran could be regarded as void in its entirety because of the threat or use of coercion in its procurement, under international law the United States may not choose to honor some of its provisions and not others.

February 5, 1981

## MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This responds to your request for our views whether the United States could choose, consistent with international law, to implement some parts of the agreement and not others, assuming, *arguendo,* that the agreement were to be regarded as void under international law.[1] We conclude that the provisions are not separable.

The primary source for international treaty law is the Vienna Convention on the Law of Treaties, which entered into force in 1980. It has been signed by both the United States and Iran, but neither has yet become a party. Ex. L., 92d Cong., 1st Sess. 1 (1971), reproduced at 8 I.L.M. 679. It is frequently cited by nonparties, however, as a statement of customary international law. At the time that the Secretary of State sent the Convention to the President for transmittal to the Senate, he said: "Although not yet in force, the Convention is already generally recognized as the authoritative guide to current treaty law and practice." Ex. L., 92d Cong., 1st Sess. 1 (1971).

At the outset, we would observe that the agreement concluded with Iran is a "treaty" within the meaning of the Convention even though it is designated as an executive agreement for purposes of domestic law. The Convention applies to any written international agreement concluded between states which is governed by international law. Art. 2(1)(a).

Under the Vienna Convention, specifically Article 44(5), treaties which are void under Article 52 [2] may be maintained by the state to which coercion was applied in violation of that Article but "no separation of the provisions of the treaty is permitted." The International

---

[1] For example, Article 52 of the Vienna Convention on the Law of Treaties states: "A treaty is void if its conclusion has been procured by the threat or use of force in violation of the principles of international law embodied in the Charter of the United Nations."

[2] We assume for present purposes that Article 52 would apply here to void the agreement with Iran.

Law Commission said that such an approach would be necessary to be consistent with its position on coercion in Article 52:

> Only thus, in the opinion of the Commission, would it be possible to ensure that the coerced State, when deciding upon its future treaty relations with the State which had coerced it, would be able to do so in a position of full freedom from the coercion.

[1966] 2 Y.B. Int'l L. Comm'n 169, 239 (hereafter 1966 I.L.C. Yearbook).

An argument could be made that the flat rule of Article 44(b) represents progressive development rather than existing international law and that at least in some cases separation should be permitted. *See* 1966 I.L.C. Yearbook at 238; T. O. Elias, The Modern Law of Treaties 137 ff. (1974); McNair, The Law of Treaties 474 ff. (1961). It would be difficult, however, to separate the principle of Article 52, which has been recognized by the International Court of Justice (ICJ) as representing contemporary international law,[3] and that in Article 44(5) of the Convention. Thus, if the United States honors the agreement, it has a legal duty under international law to honor all of it, and if it is void, all of it is void.

If the United States affirms the agreement but fails to implement part of the agreement, such as that relating to the estate of the Shah, Iran has several options:

(1) Iran might choose to secure a determination of this matter from the Iran-United States Claims Tribunal, as established under the Claims Settlement Agreement. The Tribunal is given jurisdiction "over any dispute as to the interpretation or performance of any provision" of the Declaration. Iran may not be able to prove damages if the United States does not intervene in Iran's suit against the Shah's estate. The Government is committed to argue that sovereign immunity and the act of state doctrine do not preclude the suit. A domestic court may decide these issues in Iran's favor even if the United States does not participate. Conversely, if Iran loses it would only be conjecture as to how the Government's failure to follow the agreement affected the result.

(2) Iran may invoke the breach as a ground for terminating the agreement. This right is independent of any claim for reparation against the United States. T.O. Elias, *supra,* at 114; Restatement of Foreign Relations Law of the United States (Revised), tentative draft No. 1, § 345, comment e (1980).

Article 60 of the Vienna Convention provides: "A material breach of a bilateral treaty by one of the parties entitles the other to invoke the breach as a ground for terminating the treaty or suspending its operation in whole or in part." A material breach involves "the violation of

---

[3] *Fisheries Jurisdiction Case,* 1973 I.C.J. 1 at ¶ 24.

a provision essential to the accomplishment of the object or purpose of the treaty." [4] For example, the fact that the United States might regard the commitments made by us regarding the assets of the Shah as peripheral rather than essential to the agreement would not be determinative, since Iran quite clearly considered these commitments as vital to any agreement. The International Law Commission spelled this out in its commentary on this article:

> Some authorities have in the past seemed to assume that any breach of any provision would suffice to justify the denunciation of the treaty. The Commission, however, was unanimous that the right to terminate or suspend must be limited to cases where the breach is of a serious character. It preferred the term "material" to "fundamental" to express the kind of breach which is required. The word "fundamental" might be understood as meaning that only the violation of a provision directly touching the *central* purposes of the treaty can ever justify the other party in terminating the treaty. But other provisions considered by a party to be essential to the effective execution of the treaty may have been very material in inducing it to enter into the treaty at all, even though these provisions may be of an ancillary character.

1966 I.L.C. Yearbook at 255 (emphasis in original).

An argument could be made that since Article II(3) of the Claims Settlement Agreement provides the Iran-United States Claims Tribunal with jurisdiction to hear claims concerning "performance" of the agreement, Iran's remedy should be limited to the Tribunal. The agreement does not, however, purport to make arbitration the *exclusive* remedy and normally a provision for arbitration does not preclude retaliation or termination. *Case concerning the Air Services Agreement of 27 March 1946 (United States* v. *France)*, 54 I.L.R. 304 (1979); Restatement, *supra,* § 345, comment e; Damrosch, *Retaliation or Arbitration—or Both? The 1978 United States-France Aviation Dispute,* 74 Am. J. Int'l L. 785 (1980). If we believed that there had been no material breach and that Iran had arbitrarily repudiated the agreement we could, of course, bring that issue to the Tribunal if Iran had not already done so.

(3) Independent of its right to suspend or terminate the agreement, Iran could invoke some other form of reprisal not involving force, 1966 I.L.C. Yearbook at 253–54, 255, proportional to the breach of the United States. L. Oppenheim, 2 International Law 115 (6th ed. H. Lauterpracht 1944).

---

[4] The ICJ has said that the rules quoted are part of customary international law. *Namibia Case,* 1971 I.C.J. 16, 46–7.

In conclusion, we note that any breach of the agreement could set in motion a serious train of consequences. Great care should thus be taken in considering any options to be pursued.

LARRY L. SIMMS
*Acting Assistant Attorney General*
*Office of Legal Counsel*
